# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

**STEPHEN G. OLITA,** *individually and in his capacity as President of ECIMOS, LLC,*

        **Plaintiff,**

        v.

**JOHN P. McCALLA, et al.,**

        **Defendants.**

**Case No. 2:21-cv-2763**
**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

The plaintiff in this action, Stephen G. Olita, is unhappy with the way in which the principal defendant in this action, Senior United States District Court Judge Jon P. McCalla ("Defendant" or "Judge McCalla"), carried out his judicial duties in another action that indirectly involved Olita.[1] More specifically, Olita claims he is the president (and apparently owner) of the entity ("ECIMOS, LLC") that was the plaintiff in that previous action, and that the Judge's Orders in that action have wrongly harmed ECIMOS (and thus in turn harmed him).

Typically, when a party alleges he is aggrieved by the way a judge handles a lawsuit, the remedy comes by way of appeal, or, in certain unique circumstances, perhaps through a writ under the All Writs Act. Olita chose a different tack—he filed a pro se Complaint against Judge McCalla in both the Judge's official and individual

---

[1] As further described below, the case consists of individual-capacity and official-capacity claims against Judge McCalla. The Court refers to Judge McCalla as the "principal defendant" because the other defendant, the United States of America, merely substituted in as the named defendant on the official-capacity claims.

capacities (Doc. 1), asserting *Bivens* claims predicated on Judge McCalla allegedly violating Olita's constitutional rights under the First, Fifth, and Seventh Amendments, and seeking by way of remedy "removal of Jon P. McCalla as the presiding federal officer" in that previous action, and also modifications to various Orders that Judge McCalla entered.

On April 20, 2022, the Chief Judge of the Sixth Circuit Court of Appeals designated the undersigned, who is a judge on the District Court for the Southern District of Ohio, to act as the judge in this matter pursuant to 28 U.S.C. § 292(b). (*See* Doc. 46 (filed May 10, 2022)). This matter is now before the Court on various filings, including most notably Judge McCalla's motion to dismiss for lack of jurisdiction and failure to state a claim. (Doc. 26). In that motion, Judge McCalla sets forth a host of reasons why Olita's claims against him allegedly fail as a matter of law.

The Court need not reach the most of those arguments, though, because the Court finds that two are dispositive. First, the Court agrees that Olita has failed to adequately allege standing. Second, absolute judicial immunity bars Olita's claims. Accordingly, as more fully explained below, the Court **GRANTS** the motion to dismiss (Doc. 26), and dismisses this action **WITH PREJUDICE**. That said, to the extent that Olita believes that he or ECIMOS was wrongly aggrieved by Judge McCalla's Orders in the previous action, he (or, more accurately, the ECIMOS entity that is the party to that action, and which he allegedly controls) is of course entitled to pursue appellate relief in that action, at least to the extent that the passage of time has not barred the availability of such relief.

## BACKGROUND

### A.   Olita Files A Pro Se Complaint Against Judge McCalla.

Olita filed his pro se Complaint in this matter on December 8, 2021. Olita claims that he is suing "individually and in his capacity as President of ECIMOS, LLC." (Compl., Doc. 1, #1). He purports to sue Judge McCalla "[i]ndividually and in his official capacity as Senior Judge of the Western District of Tennessee." (*Id.*). As noted above, Olita claims to bring this action pursuant to *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), based on Judge McCalla's alleged violations of Olita's constitutional rights under the First, Fifth, and Seventh Amendments to the United States Constitution. (*Id.*).

While that much is clear, the actual substantive basis for his Complaint is less so. For example, he claims that Judge McCalla "acted in a tortious manner under the color of his official capacity as Judge in the United States District Court for the Western District of Tennessee Western Division." (*Id.* at #2). Specifically, he points to Judge McCalla's "post-verdict prejudicial behavior" in "Case number 2:15-cv-02726-JPM-cgc ECIMOS, LLC vs. Carrier filed November 5, 2015 for Copyright infringement." (*Id.*). That case, which this Court will refer to as the Carrier Action, was a copyright action by ECIMOS, LLC (which the Complaint in that action describes as "a limited liability company organized under the laws of Tennessee," *see* Case No. 2:15-cv-02726, Compl., Doc. 1-3, #11) against Carrier Corporation. The case went to jury verdict, which ECIMOS won. (*See* Case No. 2:15-cv-02726, Verdict, Doc. 359).

Olita's reference to "post-verdict prejudicial behavior" appears to relate to certain post-verdict Orders that Judge McCalla entered in the Carrier Action. Olita alleges that these "post-verdict orders of the Defendant have prejudiced the jury and its verdict," and that "his purported orders as a result are void with no legal force …." (Compl., Doc. 1, #3). From what the Court can tell, Olita's complaints seem directed at the Orders the Judge entered on ECIMOS's request for injunctive relief (which Judge McCalla granted), and in connection with the Judge's oversight of the Special Master the Judge appointed in connection with that injunction. According to Olita, these Orders allegedly arose from, or reflect, judicial misconduct. For example, "Mr. McCalla under the color of judge [sic] recently testified … as a software technical expert." (*Id*. at #3). Olita also claims that, as a result of these Orders, his "IP and copyright property was seized by the court" at an unfairly low licensing rate, which Olita claims is "tantamount to not immediately incarcerating but releasing the convicted criminal upon the public," and "forc[ing] his victim to assist in his rehabilitation by continuing to allow him uncompensated use of his stolen property and to serve as his parole officer pro bono." (*Id*. at #3–4). Going on, Olita claims that the Judge issued "deceptively worded orders that subvert [the jury's] findings and further suppress plaintiff's 1st amendment right to free speech." (*Id*. at #4).

Finally, perhaps anticipating that Judge McCalla may seek to rely on a judicial immunity defense, Olita mounts a preemptive strike in his Complaint. Olita avers that Judge McCalla "can't argue 'Judicial' immunity since Judges cannot invoke judicial immunity concerning their acts that allegedly violate a **non-litigant's** civil

rights." (*Id.* (emphasis in original)). Rather, the "VERIFIED COMPLAINT creates a new Plaintiff as a US Citizen who is suing Mr. McCalla." (*Id.* at #5).

Beyond requesting an Order removing Judge McCalla as the presiding judicial officer in the Carrier Action, Olita also attaches to his Complaint an omnibus filing advancing three motions. The first requests a modification to the injunction Judge McCalla entered in the previous copyright action. In particular, Olita wants the injunction changed to provide ECIMOS with an additional 110 months of unpaid copyright damages. The second motion appears to seek judgment on his *Bivens* claim against the Judge. And the third motion seeks an Order modifying the report that the Special Master issued in the Carrier Action, again to provide a greater monetary award to ECIMOS in that action. The motion itself goes on for some thirty-plus pages, but the contents are frankly somewhat difficult to follow. Suffice to say that the motion appears to recount, in extensive detail, the grievances that Olita claims to have suffered as a result of Judge McCalla's (and the Special Master's) alleged mishandling of the previous copyright action involving ECIMOS. The gist of it is this—although ECIMOS won the Carrier Action, Olita believes that Judge McCalla's conduct deprived Olita's company of many of the benefits to which it was entitled given that win.

**B.     A Flurry Of Filings Follow, Including, As Most Relevant Here, Two Motions To Dismiss.**

The same day that Olita filed his Complaint, the Clerk, acting pursuant to Western District Standing Administrative Order 2013-05, assigned the matter to a Magistrate Judge for "management of all pretrial matters." Then, in January, before

Judge McCalla had even answered the Complaint, Olita moved for summary judgment (Doc. 9). While that motion was pending before the assigned Magistrate Judge, Olita also filed a short "Amended Complaint" (Doc. 10), that purported to supplement, but not replace, the original Complaint.

Since that time, a flurry of other filings have followed. Judge McCalla sought an extension of time to answer or otherwise plead (Doc. 14), which Olita opposed (Doc. 15), but the Magistrate Judge granted (Doc. 17). Olita has since appealed that ruling to the district court. (*See* Doc. 21). Meanwhile, the United States moved to substitute itself as the proper defendant on the official-capacity claims against Judge McCalla (Doc. 18), which the Magistrate Judge also granted (Doc. 28), and to which Olita again objected (Doc. 31). In addition, the parties completed briefing on Olita's above-mentioned motion for summary judgment, including a sur-reply. (*See* Docs. 12, 13, and 19). And, on March 4, 2022, the Magistrate Judge issued a Report & Recommendations ("R&R") (Doc. 22), which recommends denying that motion. Olita has since objected to that R&R (Doc. 27), which has also been fully briefed (Docs. 32 and 34).

Shortly after the Magistrate Judge entered his R&R on Olita's motion for summary judgment, both Judge McCalla (*see* Doc. 26) and the United States (*see* Doc. 29) also moved to dismiss the action. According to Judge McCalla, the Court should dismiss the personal-capacity claims against him "for at least five broad reasons." (Mot. to Dismiss, Doc. 26, #377). First, he argues that, while the remedy Olita seeks is Judge McCalla's removal as presiding officer in another case, Olita did not comply

with 28 U.S.C. §§ 144 and 455, which govern recusal requests. (*Id.* at #382). Second, Judge McCalla argues that Olita's attempt to file an Amended Complaint did not comply with Federal Rule of Civil Procedure 15(a) or (c). (*Id.* at #384). Third, he claims that Olita lacks standing, as ECIMOS was the party to the previous suit, and thus it was the entity, and not Olita, that suffered harm as a result of any wrongful orders in that action. (*Id.* at #385). Fourth, he argues that judicial immunity bars the action. (*Id.* at #391). And finally, he asserts that the claims are time-barred under the one-year statute of limitations that applies to *Bivens* claims. (*Id.* at #395).

As noted, the United States also sought dismissal of the official-capacity claims, as to which it had substituted in as the defendant. In that motion, the United States argues that the official-capacity tort claims against Judge McCalla are tort claims against the government, and thus are subject to sovereign immunity. While the United State admits that it is "generally liable for torts in the same manner and extent as a private individual," it observes that a party pursuing a tort claim against the government must comply with the procedures set forth in the Federal Tort Claims Act ("FTCA"). (Gov't Mot. to Dismiss, Doc. 29, #664). In particular, such claims are subject to an administrative exhaustion requirement, and the government contends that Olita failed to comply with the requirement here.

Both motions are now fully briefed. Indeed, as to Judge McCalla's motion to dismiss, Olita not only opposed the motion (Doc. 30), but after Judge McCalla replied, Olita also sought leave to file a sur-reply (Doc. 39), to which Judge McCalla objected (Doc. 41). And, as for the government's motion to dismiss, Olita likewise both opposed

(Doc. 33), and sought leave to file a sur-reply (Doc. 43), which the government also opposed (Doc. 47). As this description suggests, there is no shortage of briefing in this matter, which in roughly six months has resulted in some 47 individual filings.

As noted above, a designation filed on May 10, 2022, named the undersigned judge to handle this case. (Doc. 46).

## LEGAL STANDARD

In addressing the pending motions to dismiss, the Court reaches both the standing argument and certain arguments directed at the merits. Thus, two different legal standards apply. As to standing, "[e]ach element of standing 'must be supported … with the manner and degree of evidence required at the successive stages of the litigation.'" *Fair Elections Ohio v. Husted*, 770 F.3d 456, 459 (6th Cir. 2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element" of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). But, in determining whether the plaintiff has cleared that hurdle, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Warth*, 422 U.S. at 501).

As for arguments directed at the substance of the claims themselves, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a

motion to dismiss, in other words, [a plaintiff] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted).

In making that determination, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation omitted). That is so, however, only as to factual allegations. The Court need not accept "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets omitted) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Likewise, the Court need not accept as true any legal conclusions alleged in a complaint; "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice. *Id.*

With that in mind, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678. Under the *Twombly/Iqbal* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a threshold level of factual plausibility before defendants are subjected to the potential rigors (and costs) of the discovery process. Discovery, after all, is not meant to allow parties to discover whether a claim in fact exists, but rather to provide a process for gathering evidence to substantiate an already plausibly-stated claim. *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

## LAW AND ANALYSIS

The two motions to dismiss advance a wide variety of arguments as to why Olita's Complaint fails as a matter of law. The Court need not address all those arguments, though, as it finds two of them dispositive. First, the Court concludes that Olita has failed to make the requisite showing that he has standing to pursue the claims he presses. Second, the Court concludes judicial immunity bars the claims Olita advances against Judge McCalla, and the relief he requests. The Court addresses both of those below.

### A.    Olita Lacks Standing To Pursue The Claims He Asserts.

Standing has both a constitutional and a prudential component. Olita's standing problem here principally relates to the latter, rather than the former. But understanding why that is so requires a quick trip through the principles that govern the former, so the Court starts there.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quoting U.S. Const., Art. III, § 2). And "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo,* 578 U.S. at 338. "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982); *Warth*, 422 U.S. at 498–499). In doing so, the doctrine "serves to prevent the judicial process from being used to usurp the powers of the political branches …

10

and confines the federal courts to a properly judicial role." *Id.* (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 407 (2013), and *Warth*, 422 U.S. at 518). To show constitutional standing, the plaintiff must demonstrate that he or she (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendants, and (3) that is likely to be redressed by a favorable judicial decision. *Id.*

Here, Olita claims that Judge McCalla's alleged misconduct is causing ECIMOS LLC, and by extension Olita, monetary harm. Monetary harm satisfies the requirement for an injury in fact, and thus so far so good.

But prudential standing adds another gloss to the standing analysis, particularly where, as here, a party is seeking to rely on harm *to another* to create standing for himself. That is because one aspect of the prudential standing doctrine is that "the plaintiff generally must assert *his own* legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth*, 422 U.S. at 499. In the context of business entities that have a separate legal identity (such as a corporation or an LLC), the prohibition on third-party standing typically in turn means that a business's owners cannot seek to enforce the business's rights. *See generally, e.g.*, *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 336–37 (1990); *In re AFY, Inc.*, 902 F.3d 884, 890 (8th Cir. 2018) ("Because a corporation is an entity separate and distinct from its shareholders, a shareholder does not have standing to assert a claim for harm suffered by the corporation."). In other words, "[c]onduct which harms a corporation confers standing on the corporation, not its shareholders." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010).

That same rule applies to an LLC and its members. *See Vaughn v. Taylor,* No. 2:21-CV-61, 2021 WL 6428005, at *4 (E.D. Tenn. June 15, 2021) ("As with corporations, members of LLCs generally do not have standing to bring individual claims for harms to the LLC itself."); *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 119 (4th Cir. 2004). The only exception to this owners-can't-sue-based-on-harm-to-the-entity principle is "where the shareholder suffers an injury separate and distinct from that suffered by other shareholders, or the corporation as an entity." *Quarles v. City of E. Cleveland*, No. 99-3050, 1999 WL 1336112, at *3 (6th Cir. 1999) (per curiam).[2]

The prudential limitation on third-party standing creates an insurmountable problem for Olita based on his allegations here. He seeks redress for Judge McCalla's allegedly wrongful conduct in another lawsuit, but Olita alleges that the Judge's conduct harmed the party to that suit—ECIMOS LLC. For example, he claims that the Judge's alleged misconduct resulted in the company failing to receive "110 months of the unpaid actual and profits damages balance owed by Carrier to ECIMOS, LLC." (Compl., Doc. 1, #6). He also claims that failure to provide redress will mean that "ECIMOS will be unfairly denied proper and full damages recovery." (*Id.* at #24). Consistent with that, he "prays the Court [in this suit] order Carrier to pay ECIMOS

---

[2] When a business owner is seeking to assert a state-law cause of action, the question of whether the owner has standing is determined by the state law of the state that governs the entity. *See Vaughn*, 2021 WL 6428005, at *3 ("Whether a shareholder has standing to bring a particular state corporate-law claim turns on state corporate law." (citing *Meathe v. Ret*, 547 F. App'x 683, 688 (6th Cir. 2013))). Here, ECIMOS LLC was a Tennessee entity. *Vaughn* also involved a Tennessee entity, and so, to the extent state law governs, is directly applicable here. Moreover, here, Olita purports to assert federal causes of action, rather than state ones, so his standing to pursue those claims presumably is governed by federal law, which, as noted above, generally precludes business owners from pursuing on an individual basis claims that belong to the entity.

$803,630." (*Id.* at #32). And elsewhere, he requests that the Court remove the Judge from the previous action, and declare his orders in that action to be void, all of which would redound to the benefit of ECIMOS, LLC.

To be sure, if the Judge's conduct in the prior suit in fact harmed ECIMOS, LLC, i.e., diminished the company's value, that harm presumably would flow through as an economic matter to Olita, who claims to be the president and apparently is (or was—more on that below) the sole member of the LLC. But, as the above-cited case law demonstrates, that indirect, flow-through approach does not cut it for purposes of prudential standing. And Olita has failed identify any concrete and particularized harm that he himself has suffered as a result of Judge McCalla's allegedly wrongful conduct, that is separate and apart from the harm that ECIMOS allegedly suffered. Accordingly, Olita lacks standing to pursue these claims.

Olita offers a multi-tiered response, but it misses the mark. To start, he claims to be suing *on ECIMOS's behalf*. To be sure, that may help him on the standing front, but it creates an insurmountable obstacle on another front. Olita is not an attorney. He admits—indeed trumpets—that he is proceeding pro se. But, while he is free to do so on his own behalf, he cannot appear, pro se or otherwise, on behalf of ECIMOS. An LLC cannot proceed in court pro se, even through its sole member. *See Harris v. Akron Dep't of Pub. Health*, 10 F. App'x 316, 319 (6th Cir. 2001) ("a corporation must be represented in court by an attorney and may not be represented by an officer").

Olita has an answer for that, as well. He claims that ECIMOS is actually a sole proprietorship. Once again, though, that assertion is a double-edged sword. Olita is

13

correct that a sole proprietorship can appear in court pro se. *See N.L.R.B. v. Consol. Food Servs., Inc.*, 81 F. App'x 13, 15 n.1 (6th Cir. 2003) ("There is case law, however, that holds that a sole proprietorship has no legal existence apart from its owner and that the individual owner may represent a sole proprietorship."). That is because a sole proprietorship, unlike a corporation or an LLC, does not have any existence apart from its owner. Rather, the sole proprietorship is in many ways just another name for the individual who owns it. Thus, that individual, whether an attorney or not, can appear for the sole proprietorship, just as the individual can represent him- or herself.

But that leads to two other problems. First, in his Complaint here, Olita purports to be suing "as President of ECIMOS, LLC," not ECIMOS, a sole proprietorship. (Compl., Doc. 1, #1). Indeed, sole proprietorships do not have "Presidents" at all; they just have proprietors. Second, the "ECIMOS" that he alleges suffered harm as a result of Judge McCalla's conduct in the Carrier Action was definitely ECIMOS, LLC. One need look no further than the Complaint in that lawsuit to see that is the case. But that in turn means that, if the ECIMOS in *this* lawsuit is *not* ECIMOS, LLC, but rather some *other* entity that happens also to be named ECIMOS, but is a sole proprietorship, Olita would need some allegations establishing that the ECIMOS here (i.e., the sole proprietorship) suffered harm as a result of the harm allegedly inflicted on ECIMOS, LLC in the Carrier Action. After all, even at the pleading stage, "the plaintiff must 'clearly ... allege facts demonstrating' each element" of standing. *Spokeo*, 578 U.S. at 338. Absent some

14

allegations in Olita's Complaint tying *this* ECIMOS to *that* ECIMOS, the Complaint fails to clear that hurdle.

In sum, the Court concludes that Olita has failed to sufficiently allege he has standing to pursue the claims that he asserts in his Complaint. Accordingly, the Court **DISMISSES** his Complaint (Doc. 1). That said, the standing problems are perhaps fixable, depending on the actual state of affairs between ECIMOS, LLC and the new ECIMOS sole proprietorship that Olita claims in his briefing now exists. Accordingly, a dismissal without prejudice may be warranted to see whether Olita could address the concerns identified above. The Court concludes that is not appropriate here, though, for a separate reason—even if Olita could sufficiently allege standing to pursue his claims, those claims also fail on the merits. In particular, judicial immunity bars Olita's claims, as he is essentially seeking to use this lawsuit to mount a collateral attack on Judge McCalla's exercise of his judicial powers in the Carrier Action. That is the topic to which the Court turns now.

**B.    Judicial Immunity Bars Olita's Claims.**

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967). The Supreme Court first expressly recognized the doctrine in *Bradley v. Fisher*, 80 U.S. 335, 347 (1871), where it observed that a judge "cannot be subjected to responsibility for [a judicial act] in a civil action." The Court also explained why that is so:

> [I]t is a general principle of the highest importance to the proper
> administration of justice that a judicial officer, in exercising the

authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself. Liability to answer to every one who might feel himself aggrieved by the action of the judge, would be inconsistent with the possession of this freedom, and would destroy that independence without which no judiciary can be either respectable or useful.

*Id.*

To be sure, the doctrine is typically framed in terms of immunity from suits for money damages, whereas here the suit seeks injunctive relief. That could perhaps pose a problem, particularly given the Supreme Court's holding in *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984), that judicial immunity "is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." But *Pulliam* involved a § 1983 claim against a state judicial officer, as opposed to the *Bivens* claim that Olita asserts here. Moreover, Congress largely abrogated *Pulliam* in the Federal Courts Improvements Act ("FCIA"), Pub. L. No. 104–317, 110 Stat. 3847 (1996), in which it amended § 1983 to provide that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." *See Bolin v. Story*, 225 F.3d 1234, 1239–43 (11th Cir. 2000) (explaining impact of FCIA on Supreme Court's decision in *Pulliam*, and on *Bivens* actions against federal judges seeking injunctive relief).

In any event, whether it is because *Bivens* is a different cause of action from § 1983, or because of the changes wrought through the FCIA, it appears well-settled that "[i]n the Sixth Circuit, absolute immunity in a *Bivens* actions against federal judges extends to requests for injunctive and other forms of equitable relief as well

16

as to claims for damages." *Irvin v. Campbell*, No. 3:14-cv-0360, 2014 WL 576332, at *2 (M.D. Tenn. Feb. 12, 2014) (citing cases). *See also, e.g.*, *Kipen v. Lawson*, 57 F. App'x 691, 691 (6th Cir. 2003) ("Absolute immunity in *Bivens* actions against federal judges has also been extended to requests for injunctive relief."); *Newsome v. Merz*, 17 F. App'x 343, 345 (6th Cir. 2001) ("federal judges are immune from *Bivens* suits for equitable relief"); *Vargas v. Trauger*, No. 3:13-cv-0600, 2013 WL 3243094, at *3 (M.D. Tenn. June 25, 2013), *dismissed* Feb. 10, 2014 ("The fact that the plaintiff seeks injunctive relief only, rather than damages, does not affect the defendants' entitlement to immunity. In the Sixth Circuit, absolute immunity in [] *Bivens* actions against federal judges extends to requests for injunctive and other forms of equitable relief."). *Cf. Bolin*, 225 F.3d at 1240 ("[T]he doctrine of absolute judicial immunity serves to protect federal judges from injunctive relief as well as money damages."). As one circuit court has explained, allowing such injunctive relief "would be to permit, in effect, a 'horizontal appeal' from one district court to another or even a 'reverse review' of a ruling of the court of appeals by a district court." *Mullis v. U.S. Bankr. Ct. for Dist. of Nev.*, 828 F.2d 1385, 1392–93 (9th Cir. 1987). "Such collateral attacks on the judgments, orders, decrees or decisions of federal courts are improper." *Id.* at 1393 (citing cases).

In terms of scope, "[a]bsolute judicial immunity applies to all judges and other persons engaged in a judicial function, which is defined as the 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.'" *Irvin*, 2014 WL 576332, at *2 (quoting *Burns v. Reed*, 500 U.S. 478,

500 (1991)). Moreover, so long as the judge's conduct occurs "in the context of resolving disputes between the parties," judicial immunity attaches to even such mundane tasks as "setting dates for hearings." *Kipen*, 57 F. App'x at 692. The immunity itself, once it attaches, is quite expansive. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978).

That immunity precludes Olita from moving forward with his claims here. No one could seriously maintain that Judge McCalla was acting "in the clear absence of all jurisdiction" in presiding over the Carrier Action. That suit involved copyright claims, which fall within the federal court's jurisdiction under 28 U.S.C. § 1331. Indeed, it was ECIMOS that *invoked* the court's jurisdiction in the Carrier Action. Moreover, the Carrier Action also has been to the Sixth Circuit, and no one has ever suggested that jurisdiction was lacking. *See ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616 (6th Cir. 2020). Thus, while this Court acknowledges that Olita may feel aggrieved by the way in which Judge McCalla ruled in that action on various post-verdict matters, Olita's claims clearly fall within the well-established contours of absolute judicial immunity. Accordingly, those claims fail as a matter of law.

That is not to say that Olita does not have any relief available to him. It appears he did not like the way that Judge McCalla ruled on post-verdict motions in the Carrier Action. Fine. He (or more accurately ECIMOS) should have appealed

18

those rulings. In fact, as noted above, it appears that ECIMOS did so. In that appeal, the Sixth Circuit considered various challenges that ECIMOS brought against Judge McCalla's post-verdict rulings in the Carrier Action. *Id*. Many of those challenges sound eerily similar to the challenges that Olita now seeks to press here. For example, there ECIMOS contended that "the district court should have granted [ECIMOS's] post-trial motion for additional disgorgement." *Id*. at 638. ECIMOS also asserted that "the scope of the district court's post-trial injunction should be altered." *Id*. at 641. Indeed, given the issues the Sixth Circuit reviewed there, this action may well offer a prime example of the "'reverse review' of a ruling of the court of appeals by a district court" against which the court warned in *Mullis*, 828 F.2d at 1393.

For present purposes, though, this Court need not determine whether the complaints that ECIMOS, LLC, advanced in that appeal are precisely the same as those that Olita presses here. Whether the present action would require this Court to revisit the Sixth Circuit's determination in *Carrier* or not, the underlying point is merely that ECIMOS certainly had a forum in the context of the Carrier Action itself for the kind of complaints about the Judge's Orders that Olita now instead wants to assert here. And that admonition applies equally to Olita's request to have Judge McCalla removed as the presiding officer in the Carrier Action. The party in that action, i.e., ECIMOS, could have filed a motion seeking the Judge's recusal. And, if ECIMOS believed that Judge McCalla wrongly denied such a motion, it could have—indeed, should have—appealed. *See, e.g.*, *PNC Equip. Fin. v. Mariani*, 758 F. App'x

19

384, 391 (6th Cir. 2018) (considering challenge to judge's refusal to recuse). A new federal court action, though, is decidedly not a substitute for a forgone appeal.

The Court recognizes that the outcome of litigation can be, and often is, disappointing to one party or another. Olita undoubtedly found it frustrating that ECIMOS won its lawsuit, but that he did not receive all the benefits that he believed such a win would entail. The remedy for such concerns, though, if any, lies by way of an appeal, not by way of a new lawsuit directed at the judge in the former suit. Because absolute judicial immunity bars Olita's claims, the Court **DISMISSES** this action **WITH PREJUDICE**.[3]

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Judge McCalla's Motion to Dismiss (Doc. 26), and **DISMISSES** this action **WITH PREJUDICE**. The Court **DENIES** all other outstanding motions, including the objections (Doc. 27) to the R&R (Doc. 22), as **MOOT**, and also declines on those same grounds to either adopt or reject the outstanding R&R (Doc. 22). The Court **DIRECTS** the Clerk to **ENTER JUDGMENT** in Defendants' favor consistent with this Opinion.

---

[3] The parties have not identified, and the Court has not located, any case law suggesting that the scope of judicial immunity is different for official capacity claims than it is for individual capacity claims. Thus, the Court dismisses the official-capacity claims on the same immunity grounds. That **MOOTS** the government's motion to dismiss (Doc. 29), in which the government had advanced a failure-to-exhaust argument. That said, the Court agrees with the government that the official-capacity claims are subject to an exhaustion requirement, which would be an alternate grounds for dismissing those claims. Beyond the government's motion to dismiss, the Court's ruling on Judge McCalla's motion to dismiss also **MOOTS** all other outstanding motions, as well as the R&R (Doc. 22) and the objections (Doc. 27) to that R&R.

**SO ORDERED.**

May 24, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**